

November 12, 2018

Hon. Mitchell S. Goldberg
United States Courthouse
601 Market Street, Room 7614
Philadelphia, Pennsylvania 19106

     Re:    *Catlin Spec. Ins. Co. v. J.J. White, Inc., et al.*, No. 14-cv-1255

Dear Judge Goldberg:

The purpose of this letter-brief is, as requested in the Court's October 30, 2018 Order ("the Order"), to specify what J.J. White and Sunoco ("the Insureds") must prove in order to potentially prevail on their counterclaim seeking to recover the settlement amount paid in the *Gans* Suit.[1]

## The Insureds' Burden of Proof

The Insureds' burden of proof is set forth in the Court's February 26, 2018 Memorandum Opinion ("February Opinion") and the Insureds' Motion for Reconsideration. In its February Opinion, this Court held—and the Insureds now concede—that J.J. White and Sunoco "bear[] the burden of proving whether a loss falls within the *initial grant of coverage.*"[2] The Insureds represented that they must also prove "that potential liability for a covered loss existed at the time of the settlement; and . . . that the settlement was reasonable."[3] The Insureds must, therefore, prove (1) that there is coverage under the Policy for the *Gans* settlement; (2) potential liability for Gans' leukemia existed at the time of the settlement; and (3) the settlement was reasonable.

---

[1] All undefined terms referenced herein are defined in the parties' summary-judgment briefing.
[2] Feb. Op. at 27.
[3] Reply Memo. in Support of Motion for Recons. (Dkt. 121) at 6.

November 12, 2018
Page 2

## The Insureds' Burden of Proof With Respect to Coverage

*The Pollution Policy Defines the Insureds' Burden on Coverage*

The language of the Pollution Policy dictates what the Insureds must prove in order to establish coverage.[4] The policy provides coverage only for:

> a **Pollution Loss**. . . as a result of a **Pollution Claim** . . . from **Pollution Conditions** arising out of a **Contractor Activity** insured herein, provided that:
> 1. the **Pollution Loss** arises out of an actual or alleged **Contractor Activity** rendered or failed to be rendered by either the **Insured,** or others for whom the **Insured** is legally responsible; and
> 2. the **Pollution Conditions** first occurred on or after the **Retroactive Date**. . . ; and
> 3. prior to the effective date of the first policy issued to the **Insured** . . . , no principal, partner, director or officer of the **Insured** had knowledge of any circumstance that could reasonably be expected to result in a **Pollution Claim.**[5]

So, the Insureds must prove that: (1) Mr. Gans' leukemia was caused by a **Pollution Condition**;[6] (2) the **Pollution Condition** which caused Mr. Gans' leukemia first occurred on or after the **Retroactive Date**;[7] (3) the **Pollution Condition** which caused Mr. Gans' leukemia arose from a **Contractor Activity**; and (4) the Insureds were not aware, prior to the Pollution Policy's effective date, of any circumstance that could be expected to result in a **Pollution Claim.** Although the Insureds argue that this burden of proof runs counter to the position they took in the underlying litigation, the Insureds are bound by the terms of the insurance contract they entered into—a contract which provided coverage only for *pollution-related* losses.

---

[4] *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 659 Fed. App'x 46, 50 (2d Cir. 2016).
[5] The Pollution Policy's definition of **Pollution Loss** also re-iterates that "[s]uch **Pollution Loss** must result from a **Pollution Condition** arising from a **Contractor Activity** otherwise insured herein" and defines **Contractor Activity** as "any general construction . . . which results in a **Pollution Condition**."
[6] The Pollution Policy requires a **Pollution Loss** *from* **Pollution Conditions**. As explained by this Court, "from" "denote[s] causation"—meaning that Mr. Gans' leukemia must have been caused by **Pollution Conditions**. Feb. Op. at 16-17.
[7] This element is completely consistent with this Court's February Opinion, which properly concluded that "J.J. White and Sunoco, as insureds, bear the burden of proving that the Retroactive Date Provision is inapplicable—i.e., that Gans' leukemia was caused by exposures to BTEX occurring on or after the retroactive date." Feb. Op. at 29; *see also id.* at 16-17 ("'*the* Pollution Conditions' described earlier in Coverage C are those Pollution Conditions that ultimately caused the loss—<u>not any Pollution Conditions alleged in the underlying lawsuit regardless of whether those Pollution Conditions are ultimately determined by the factfinder to be the cause of the loss</u>.")(underline added).
.

*The Insureds' Position That They Have a Lesser Burden Because They Settled the Underlying Case is Contrary to New York Law*

An insured's burden—to prove that it suffered a loss that is covered by the applicable insurance policy—is the same, regardless of whether the insured settled or fully litigated the underlying case.[8] The Insureds' contention that they are not required to prove coverage because they settled the *Gans* Suit following Catlin's disclaimer is contrary to well-settled law from New York's highest court. In fact, the New York Court of Appeals rejected this same argument in *Servidone*.[9] In *Servidone*, the trial court held that the insurer must compensate the insured for the amount of settlement after determining that the insurer breached its duty to defend. On appeal, the insurer did not contest that it owed a duty to defend and conceded the reasonableness of the settlement. The only issue before the Court of Appeals was whether the insurer was obligated to indemnify the insured for settlement absent an independent showing that the claim fell within the policy's coverage. After careful analysis, the New York Court of Appeals—New York's highest court—held that the duty to indemnify cannot be based on the mere *possibility* of coverage, but rather must be based on an independent factual finding that the insured's liability is within the coverage provided by the policy. As the court explained, "even in cases of negotiated settlements, there can be no duty to indemnify unless there is first a covered loss." The court then reversed the lower court's decision "[s]ince the loss compromised by Servidone was not determined to be within the covered risks."[10]

---

[8] *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 423 (N.Y. 1985) ("*Servidone*") ("[A]n insurer's breach of [its] duty to defend does not *create coverage* and that, even in cases of negotiated settlements, there can be no duty to indemnify unless there is first a covered loss.").
[9] *Id.*
[10] *Id.* at 423. The *Servidone* court ultimately placed the burden of proof on the insurer, not the insured, because the coverage issue in *Servidone* involved a policy exclusion rather than a coverage grant. *Id.* Because this action involves coverage-grant language, rather than an exclusion, this Court properly placed the burden of proof on the Insureds. Feb. Op. at 29.

November 12, 2018
Page 4

     J.J. White and Sunoco argue that they are not required to prove coverage if proving coverage would ultimately require them to present evidence on issues of liability.  This argument is not only contrary to New York law, but hopelessly conflates the Insureds' two separate burdens—their burden to prove coverage under the policy, and their separate burden to prove that they entered into the settlement in good faith.  The cases cited by J.J. White and Sunoco only focus on what an insured must prove *after* coverage has already been established.[11]  In fact, the *Servidone* court highlighted this critical distinction when it distinguished two cases cited by the insured on the basis that "[i]n both cases, the issue was whether the insurer could avoid liability for a settlement made without its consent after it had unjustifiably refused to defend its insured.  *Since there was no question that the loss was within the policy*, simple fairness dictated the result: an insurer cannot by virtue of its own breach escape liability for the *reasonable settlement of a covered risk*.  But here there is no adjudication and no agreement that the loss fell within the ambit of the policy coverage."[12]

     J.J. White and Sunoco's focus on *Maryland Casualty Company v. W.R. Grace & Co.*, 1996 WL 109068 (S.D.N.Y. 1996) ("*Maryland Casualty*")—an unreported, property-damage case decided by a federal court interpreting New York case law—is similarly misguided.  *Maryland Casualty* did not address whether an insurance policy provided coverage for an injury.  Rather, the question was "whether, *once Grace proves that the insurer provided coverage* for property damage for a year in which Grace has a reasonable basis to believe that asbestos installation occurred, Grace has the additional burden to prove that actual installation took place in that year."[13]  The Southern District of New York's opinion was limited because "there [was] no dispute that the liability in question arose in a

---

[11] *See, e.g.*, *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1378 (E.D.N.Y. Dec. 19, 1988) (holding that "the plain text of the policies . . . belies Home's insistence on litigated proof of injury" and that "a liability incurred by reasonably settling a case is unquestionably a covered loss *so long as the claim settled would itself have been a covered loss*."); *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1092 (2d Cir. 1986) (analyzing whether an insured must demonstrate liability after the court determines that the policy "encompassed this type of liability").
[12] *Servidone* at 424.
[13] *Maryland Casualty* at *8.

year for which Grace had purchased insurance" and "the only question [at issue] is *which* of the insurance companies is liable to Grace for the loss."[14,15]  Even so, the court in *Maryland Casualty* still held that the insured must "establish a reasonable basis to conclude that the liability in the underlying cases arose in a year in which coverage was provided by the defendant insurer."  J.J. White and Sunoco must then, similarly, at a minimum establish a reasonable basis to conclude that—among the other coverage components discussed above—Mr. Gans' leukemia was caused by **Pollution Conditions** which both occurred after the **Retroactive Date** and arose out of a **Contractor Activity**.[16]

*In re Silicone Implant Insurance Coverage Litigation*, 667 N.W.2d 405 (Minn. 2003) ("*In re Silicone*") is even less applicable to the current dispute, as it involves a Minnesota court's interpretation of Minnesota law, and has not ever been cited or relied upon by any New York court.  Furthermore, as with *Maryland Casualty*, the issue in *In re Silicone* was not *whether* the loss was covered, but *when* coverage was triggered, in order to determine which insurer was required to pay for the covered loss.[17]

In summary, as this Court has correctly concluded and the Insureds have conceded, J.J. White and Sunoco have the burden of proving (1) coverage under the Pollution Policy; (2) that the settlement was reasonable; and (3) that potential liability for that covered loss existed at the time of the settlement.

---

[14] *Id.* at *9; *see also id.* at n.13 ("Grace is saying, in effect, that it has a liability that clearly belongs to one of the insurers. Why should Grace bear the burden of proving an exact date of installation so as to avail itself of coverage it has clearly purchased?").

[15] The Insureds have not argued that their burden of proof is reduced because they purchased a prior insurance policy which may provide coverage for pre-April 2002 exposure, nor could they at this late stage because that policy and insurer are not before this Court, and there has been no determination as to coverage under that prior policy.

[16] *Maryland Casualty* may also be distinguished on the basis that it involved an asbestos-related property-damage claim. *See Maryland Casualty* at n.12 ("The court 'recognized that the general rule is that the burden of proof to show coverage is on the insured,' but noted that in the underlying asbestos bodily injury case, the injured worker need only prove that 'a given manufacturer's product contributed to the worker's asbestosis at any time.'"); *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 627 (2d Cir. 1993) ("We agree with the insurers when they insist that concepts of bodily injury may not be imported wholesale into the property damage context.")

[17] *In re Silicone* at 413.

Case 2:14-cv-01255-MSG   Document 130   Filed 11/12/18   Page 6 of 6

November 12, 2018
Page 6

                Very truly yours,

                <u>/s/ Patrick M. Tomovic</u>
                **HARTER SECREST & EMERY LLP**
                Patrick M. Tomovic
                Lauren R. Mendolera
                50 Fountain Plaza, Suite 1000
                Buffalo, New York 14202
                (716) 853-1616
                *ptomovic@hselaw.com*
                *lmendolera@hselaw.com*

                **MARKS, O'NEILL, O'BRIEN,**
                **DOHERTY & KELLY, P.C.**
                *Local Counsel for Catlin Specialty Ins. Co.*
                David P. Helwig  (#26404)
                Patricia F. Moreland  (#83798)
                1800 JFK Boulevard, Suite 1900
                Philadelphia, Pennsylvania 19103
                (215) 564-6688
                *dhelwig@moodklaw.com*
                *pmoreland@moodklaw.com*

                *Counsel for Catlin Specialty Ins. Co.*